IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JULIANNE McGUIRE,<br>    Plaintiff | : | CIVIL ACTION |
| | : | |
| | : | No.: |
| v. | : | |
| | : | |
| RCN CORPORATION,<br>E-NET HOLDING, INC. d/b/a RCN,<br>RCN TELECOM SYSTEMS, INC.<br>f/k/a RCN TELECOM SERVICES OF<br>PENNSYLVANIA, INC. f/k/a<br>C-TEC CABLE SYSTEMS OF<br>PENNSYLVANIA, INC. f/k/a<br>COMMONWEALTH CABLE<br>OF PENNSYLVANIA, INC.,<br>BRENDA REESE, AL BLANETT,<br>PATRICIA GENOVESE and<br>JENNIFER   EGGLESTON,<br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | <br><br><br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

I. **PRELIMINARY STATEMENT**

This is an action for damages, declaratory and injunctive relief, attorney's fees and other relief on behalf of Plaintiff, Julianne McGuire (hereinafter "McGuire" or "Plaintiff"). McGuire was an employee of E-Net Holding, Inc. d/b/a RCN Corporation, in Bethlehem, Pennsylvania, who has been harmed by the discrimination, failure to accommodate a known disability and retaliatory practices as well as other improper conduct by Defendant, E-Net Holding, Inc. d/b/a/RCN Corporation (hereinafter "RCN") and their agents, servants and representatives and the Individual Defendants (hereinafter "Individual Defendants")  named herein.

This action is brought under Title I of the Americans with Disabilities Act of 1990 ("ADA"), as amended, 42 U.S.C. § 12101 *et seq.*, the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq., et seq.* and Pennsylvania common law.

## II. JURISDICTION AND VENUE

1. The jurisdiction and venue of this Court is invoked pursuant to Section 107 (a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.* and 42 U.S.C. § 12117 (a), which incorporates by reference Title VII of the Civil Rights Act of 1964 and 1991, as amended, 42 U.S.C. § 2000(e) *et seq.*.

2. The Supplemental Jurisdiction of this Court is invoked pursuant to Title 28 U.S.C. §1367, to consider Plaintiff's claim arising under the Pennsylvania Human Relations Act, 43 Pa.C.S.A. § 951 *et seq.*, and under Pennsylvania common law.

3. All conditions precedent to the institution of this suit have been fulfilled. As to the claim pursuant to the ADA, McGuire filed a Charge of Employment Discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC") within 300 days of the unfair employment practice and the Pennsylvania Human Relations Commission ("PHRC") against the Defendant within 180 days of the unfair employment practice. More than one year has expired from the date of filing of the Complaint of Discrimination with the PHRC. On April 2, 2002, the Equal Employment Opportunity Commission issued a Notice of Right to Sue. This action has been filed within ninety (90) days of receipt of said Notice.

## III. PARTIES

4. Plaintiff, Julianne McGuire, is an adult female citizen and resident of the Commonwealth of Pennsylvania, residing at 1906 Livingston Street, Bethlehem, Pennsylvania 18017.

McGuire all times relevant herein was employed as a Customer Service Representative with RCN Corporation.

5. Defendant, RCN Corporation, is a New Jersey corporation organized and doing business under the laws of the Commonwealth of Pennsylvania with registered offices at 105 Carnegie Center, Princeton, New Jersey 08540 and a principle place of business at 1525 Valley Center Parkway, Bethlehem, Pennsylvania 18018.

6. Defendant RCN Telecom Services, Inc. is a Pennsylvania corporation organized and doing business under the laws of the Commonwealth of Pennsylvania with registered offices at 1525 Valley Center Parkway, Bethlehem, Pennsylvania 18018. As used hereinafter, "RCN" refers to RCN Corporation and RCN Telecom Services Inc. collectively.

7. Defendant Brenda Reese (hereinafter "Reese") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Reese was a Human Resources Manager for Defendant RCN. At all times relevant hereto, Defendant Reese was an agent, servant workman and/or employee of Defendant RCN, acting and/or failing to act within the scope, course, and authority of her employment and her employer, RCN. At all times relevant, Reese was acting in her supervisory and/or personal capacity.

8. Defendant Al Blanett (hereinafter "Blanett") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Blanett was the Call Center Manager for Defendant RCN. At all times relevant hereto, Defendant Blanett was an agent, servant workman and/or employee of Defendant RCN, acting and/or failing to act within the scope, course, and authority of his employment and his employer, RCN. At all times relevant, Blanett was acting in his supervisory and/or personal capacity.

9. Defendant Patricia Genovese (hereinafter "Genovese") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Genovese was a Supervisor for Defendant RCN. At all times relevant hereto, Defendant Genovese was an agent, servant workman and/or employee of Defendant RCN, acting and/or failing to act within the scope, course, and authority of her employment and her employer, RCN. At all times relevant, Genovese was acting in her supervisory and/or personal capacity.

10. Defendant Jennifer Eggleston (hereinafter "Eggleston") is a resident and citizen of the Commonwealth of Pennsylvania. At all times relevant to this action Eggleston was a Recruiter for Defendant RCN. At all times relevant hereto, Defendant Eggleston was an agent, servant workman and/or employee of Defendant RCN, acting and/or failing to act within the scope, course, and authority of her employment and her employer, RCN. At all times relevant, Eggleston was acting in her supervisory and/or personal capacity.

11. At all time relevant herein, the Individual Defendants were adult individuals residing or doing business within the jurisdiction of this Judicial District in the Commonwealth of Pennsylvania, and except as specifically specified herein, were agents, servants and employees of RCN, acting within the scope and course of their employment.

12. At all times relevant herein, RCN has been a "covered entity" under Section 101 (2) of the ADA, 42 U.S. C. § 12111 (2).

13. At all times relevant herein, RCN was acting through its agents, servants and employees, who were acting within the scope of their authority, course of employment and under the direct control of RCN.

14. At all times relevant herein, RCN has continuously been and is now doing business in the Commonwealth of Pennsylvania and the City of Bethlehem, and has continuously had at

least 20 employees.

15. At all times relevant herein, McGuire was an "employee" as defined by the Americans With Disabilities Act, 42 U.S.C. § 12111(4), and is subject to the provisions of said Act.

16. At all times relevant herein, McGuire was "disabled" as defined by the Americans with Disabilities Act, 42 U.S.C. §12102 (2), and is subject to the provisions of said Act.

17. At all times relevant herein, McGuire was a "qualified individual with a disability" as defined by the Americans with Disabilities Act, 42 U.S.C. § 12111(8), and is subject to the provisions of said Act.

18. At all times relevant herein, RCN was an "employer" and "person" as defined by the Americans with Disabilities Act, 42 U.S.C. § 12111(5)-(7) and is subject to the provisions of said Act.

19. RCN Corporation has, acting through its agents, servants and representatives, on more than one occasion, met with McGuire and was aware of her disability of progressive joint disease of both knees.

20. RCN Corporation has, acting though its agents, servants and representatives, on more than one occasion, failed to accommodate McGuire's disability.

## IV. STATEMENT OF CLAIM

21. McGuire was hired by RCN on or about March 19, 2000, as a Customer Service Representative with scheduled work hours from 9:00 A.M. through 5:00 P.M.

22. Throughout McGuire's employment from March 19, 2000 through February 12, 2001, when she was fired by Defendants, McGuire maintained a satisfactory work and attendance record with her employer, RCN.

23. Throughout her employment with Defendant RCN as a Customer Service Representative,

McGuire's principle job responsibility was answering telephone calls from a seated position.

24. From March 19, 2000 to December 2, 2000 McGuire's scheduled work hours were 9:00 a.m. to 5:00 p.m..

25. In or about March 2000, shortly after Plaintiff was hired by Defendant RCN, she informed Defendant of her disability of progressive joint disease.

26. In or about March 2000, Plaintiff informed Jane Kroff, (hereinafter "Kroff"), RCN's Customer Service Trainer, of her disability.

27. In or about March 2000, shortly after she told Kroff, Plaintiff also informed Defendants Blanett and Reese of her disability.

28. At all relevant times herein, Plaintiff was able to perform all the essential functions of her job.

29. From October 2, 2000 through December 2, 2000, Plaintiff was on an approved medical leave.

30. Upon her return to work from the aforementioned approved leave and due to her medical condition, McGuire was forced to stop using public transportation to get to and from work, but, instead, was forced to use Valley Assisted Specialized Transportation (hereinafter "VAST"), a paratransit organization providing transportation services to persons with disabilities.

31. The aforementioned VAST could not get Plaintiff to work until 9:30 A.M., one half hour after her scheduled start time.

32. On or about December 2, 2000, her first day back to work, Plaintiff informed Defendant Genovese about the transportation problem and her need to arrive at work at 9:30 A.M.

33. During her conversation with Defendant Genovese, McGuire requested an accommodation due to the transportation problem.

34. Genovese agreed to accommodate Plaintiff and permitted her to begin work at 9:30 A.M. and work through until 5:30 P.M.

35. On or about January 15, 2001, Plaintiff was summoned to meet with Defendant Genovese regarding a new attendance policy. Based upon information provided to her by Genovese, Plaintiff believes and therefore avers that the aforementioned policy went into effect on or about January 1, 2001, and prohibited tardiness, sick days or personal days, treating all of the aforementioned as "absences."

36. Genovese at that time informed Plaintiff that each and every work day from January 1 to January 15, 2001 on which Plaintiff arrived at work at 9:30 would be counted as an absence.

37. During the January 15th meeting, Plaintiff reminded Defendant Genovese of her request for an accommodation to arrive one half hour late to which Genovese replied that she would "discuss it" with Defendant Blanett.

38. At the aforementioned meeting, Genovese, for the first time, told Plaintiff that any time missed due to doctors' appointments would be marked as sick and/or personal days.

39. During the January 15th meeting, Plaintiff also told Defendant Genovese that she was being targeted because of her disability.

40. Plaintiff was subsequently summoned a second time by Genovese on January 15th to attend another meeting--this time with Defendant Reese.

41. To Plaintiff's embarrassment and humiliation, she was summoned by Genovese and paraded in front of other employees to Reese's office.

42. At the second meeting of January 15th, McGuire was confronted by both Genovese and Reese.

43. Defendant Reese accused Plaintiff of "having a problem" while demanding Plaintiff to "explain" herself.

44. McGuire continued to ask to an accommodation due to the VAST schedule, wherein she was again told "the matter is being looked into."

45. Other issues which McGuire sought to address, and which arose during the period when she was on medical leave were also ignored by Defendants Genovese and Reese.

46. Beginning on or about January 1, 2001, Plaintiff's lateness because of the VAST schedule was being counted against her as absences under the new attendance policy.

47. On or about January 16, 2001, McGuire desperately telephoned Mark Gagliano (hereinafter "Gagliano"), Defendant RCN's Employee Relations Representative regarding the discrimination, harassment and retaliation levied against her by Defendants.

48. Gagliano referred Plaintiff to an individual named Cindy (hereinafter "Cindy") at Lifeworks Counseling who agreed that Genovese and Reese were outrageous in their treatment of Plaintiff. However, because of the new attendance policy, Plaintiff was unable to attend any counseling sessions because they would also be counted against her as absences.

49. On or about January 21, 2001, Plaintiff was again summoned to a meeting with Reese, where for a <u>third time</u> she inquired about her requests for accommodation.

50. On or about January 29, 2001 McGuire notified Defendant Genovese that she would be taking personal days as a result of the emotional embarrassment and humiliation levied on her by Genovese & Reese. Genovese did not disapprove such leave.

51. On or about January 30, 2001, McGuire received her first written warning, wherein Defendants Eggleston and Genovese declared that Plaintiff would not be permitted to take any more time off for medical treatment and that her time off for medical treatments would be counted against Plaintiff as absences.

52. On or about January 30, 2001, McGuire was summoned for a <u>fourth time</u> to meet with Eggleston and Genovese, at which time they presented her with her second written warning regarding absences. Defendants Eggleston and Genovese threatened Plaintiff with further disciplinary action because of her "attendance problems."

53. The effects of Plaintiff's disability and medical treatment required Plaintiff to be absent on or about February 6, 7, 8 and 9, 2001. Plaintiff duly telephoned Defendant Genovese on each of the aforementioned days to advise her of her status and need for additional leave.

54. On or about February 12, 2001, Defendant Reese telephoned McGuire at home and told her that she was fired.

55. During the aforementioned telephone conversation, Reese informed Plaintiff that Defendants Genovese, Blanett and Reese had "decided to terminate your employment."

56. Reese also curtly informed Plaintiff that "There will be a letter sent to you. Thank-you and good-bye."

57. Defendant RCN sent McGuire a letter of termination letter on or about February 12, 2001. In it she was directed to contact Defendant Blanett to obtain her last paycheck and recover her personal property.

58. When Plaintiff attempted to reach Defendants Genovese, Blanett and Reese by telephone, they would not return her calls.

59. From December 2, 2000 through February 12, 2001, Plaintiff requested accommodations for her disability.

60. Defendants initially granted Plaintiff's request for an accommodation and shortly thereafter retracted it by denying Plaintiff's request to work a modified shift due to her transportation problems.

61. At all relevant times thereafter, Defendant RCN, acting through its supervisory employees, Defendants Reese, Blanett, Genovese and Eggleston, denied McGuire's requests for accommodation.

62. Defendants failed to timely advise Plaintiff of the change of attendance policy, telling her a full two weeks after other employees at RCN had been told.

63. Defendants required Plaintiff to be penalized for any sick, personal or late time, despite her disability and request for an accommodation.

64. The aforementioned attendance policy had the effect of penalizing Plaintiff with absences, which Plaintiff believes was directly the result of her having the disabling condition.

65. Thereafter, Plaintiff was terminated by Defendants.

66. At all relevant times herein, Defendant RCN, through its agents, servants and representatives, was aware of Plaintiff's disability.

67. At all relevant times herein, Defendant RCN, through its agents, servants and representatives, was aware that Plaintiff required accommodations for her disability.

68. Plaintiff believes and therefore avers that Defendants' sudden and unannounced change of attendance policy was directly targeted to remove her accommodation, and that Defendants responded to Plaintiff's continued requests for accommodations and relief from this new oppressive and illegal policy by engaging in a series of harassing and

threatening behavior.

69. Defendants retaliated against Plaintiff for her repeated requests for accommodations. This retaliation occurred in the context of Plaintiff's employment with Defendant RCN. The retaliation included, but was not limited to the following:

   a. Illegally and without notice amending their attendance policy with the intent and effect of removing Plaintiff's requested accommodation;

   b. Defendants Genovese and Eggleston issued four verbal warnings to Plantiff for tardiness and absences;

   c. Defendants Genovese and Eggleston issued two separate written warnings against Plaintiff for tardiness and absences. As a result of the aforementioned warnings Plaintiff was terminated from her employment with Defendant RCN;

   d. Defendants Reese, Blanett, Genovese and Eggleston retaliated against Plaintiff by way of a campaign conducted by them to discipline Plaintiff, harass Plaintiff and discharge Plaintiff from employment with Defendant RCN;

   e. Defendants Reese, Blanett, Genovese and Eggleston made demeaning and untrue remarks about Plaintiff to other people, including employees, personnel and other staff of Defendant RCN, many of whom Plaintiff had contact with on a regular basis and many of whom she had to work with and/or report to;

   f. Reese and Genovese held Plaintiff up to public ridicule by unnecessarily and illegally exposing her condition and their on-going harassment of her

  to the other employees;

 g. Reese and Genovese held Plaintiff up to public ridicule by accusing her of urinating on her chair in the presence of the other employees;

 h. In response to Plaintiff's repeated request for accommodations Defendants failed to accommodate Plaintiff and continued to do nothing to accommodate Plaintiff in violates of polices and laws;

 i. Despite Defendant's knowledge of Plaintiff's disability, Defendant RCN took no action to require an accommodation for Plaintiff;

 j. Defendants failed to promptly and effectively address Plaintiff's concerns and requests for accommodation.

70. As a direct and proximate result of RCN Corporation's conduct, Plaintiff has suffered damages due to pain, suffering, mental anguish, fear, anxiety, sleeplessness, humiliation and severe emotional, psychological and physical distress.

71. As a direct and proximate result of RCN's invidiously discriminatory actions, as aforesaid, Plaintiff has suffered damages due to loss of past income, benefits and earnings in excess of One Hundred Thousand Dollars ($100,000.00).

72. As a direct and proximate result of RCN's invidiously discriminatory actions, as aforesaid, Plaintiff has suffered damages due to loss of future income, benefits, earnings and earnings capacity in excess of One Hundred Thousand Dollars ($100,000.00).

73. As a direct and proximate result of RCN's invidiously discriminatory actions, as aforesaid, Plaintiff has suffered mental anxiety, anguish, distress, humiliation, and sleeplessness, which damages exceed One Hundred Thousand Dollars ($100,000.00).

74. Plaintiff seeks reinstatement to her former position, together with back pay,

compensatory and other damages set forth herein.

75. Defendant RCN's aforesaid actions were outrageous, egregious, preposterous, malicious, intentional, willful, wanton and in reckless disregard of McGuire's rights, entitling McGuire to punitive damages in excess of One Hundred Thousand Dollars ($100,000.00).

## COUNT I
## JULIANNE McGUIRE
## v.
## RCN
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

76. McGuire incorporates by reference paragraphs 1 through 75 of her Complaint as though fully set forth at length herein.

77. At all times relevant herein, McGuire was regarded as disabled by Defendants.

78. At all times relevant herein, McGuire suffered from a condition that limits major life activities, including but not limited to walking, climbing stairs, driving, standing, and engaging in any recreational activities that requires ambulation of any kind.

79. McGuire was able to perform all of the essential functions of the position of Customer Service Representative without accommodation.

80. McGuire required and requested accommodation in the form of an extension of time of one half hour to arrive at work and stay an extra half hour, due to her medically necessary transportation carrier.

81. Plaintiff believes and therefore avers that other employees who were non-compliant with the revised attendance policy who were not disabled were not disciplined or terminated from employment.

82. Defendant was not prevented from accommodating Plaintiff by any rule or regulation of

any governmental agency.

83. Plaintiff's requested accommodation would not have imposed an undue hardship upon Defendant, and therefore they were required as a matter of law to grant the requested accommodation.

84. Even if the requested accommodation could be said to have imposed an undue burden on Defendant, it failed to engage in an interactive process to formulate a reasonable accommodation based upon Plaintiff's needs.

85. RCN intentionally, knowingly and purposefully violated the Americans with Disabilities Act by invidiously discriminating against the qualified McGuire who had a disability.

86. By its actions and inactions through its agents, servants and representatives, RCN created, maintained and permitted to be maintained a work environment which was hostile to persons such as Plaintiff who have or are perceived as having a disability.

87. On or about February 12, 2001, as a direct result of Plaintiff's disability, Defendant terminated Plaintiff's employment.

88. Defendants' aforesaid actions were outrageous, egregious, malicious, intentional, willful, wanton and in reckless disregard of McGuire's rights, entitling McGuire to punitive damages in excess of One Hundred Thousand Dollars ($100,000.00).

### COUNT II
### JULIANNE McGUIRE
### v.
### RCN
### RETALIATION UNDER THE ADA

89. Paragraphs 1 through 88 inclusive, are incorporated by reference as if fully set forth at length herein.

90. By the acts complained of, Defendants have retaliated against Plaintiff for exercising her

rights under the Americans with Disabilities Act in violation of the Act.

91. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory practices unless and until this Court grants relief.

COUNT III
JULIANNE McGUIRE
v.
ALL DEFENDANTS
<u>VIOLATION OF THE PENNSYLVANIA HUMAN RELATIONS ACT</u>

92. McGuire incorporates by reference paragraphs 1 through 91 of her Complaint as though fully set forth at length herein.

93. The unlawful actions of Defendants acting as aforesaid, constitutes a violation of Title 43 Pa.C.S.A. §951 *et seq.* of the Pennsylvania Human Relations Act. The unlawful practices for which Defendants are liable to McGuire include, but are not limited to, discriminating against McGuire because of her disability, forcing McGuire out of her employment with RCN because of her disability.

94. At all times material hereto, the Individual Defendants aided and abetted the discriminatory conduct of Defendant RCN.

95. As a direct result of the Defendants' willful and unlawful actions in treating McGuire in a discriminatory manner solely because of her disability, in violation of Title 43 Pa.C.S.A. § 951 *et seq.* of the Pennsylvania Human Relations Act, McGuire has sustained severe emotional distress, loss of earnings, plus the value of benefits, plus loss of future earning power, plus back pay, front pay and interest due thereon.

COUNT IV
JULIANNE McGUIRE
v.

**ALL DEFENDANTS**
**RETALIATION UNDER THE PHRA**

96. Paragraphs 1 through 95 inclusive, are incorporated by reference as if fully set forth at length herein.

97. By the acts complained of, Defendants have retaliated against Plaintiff for exercising her rights under the Pennsylvania Human Relations Act in violation of the Act.

98. Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of Defendants' retaliatory practices unless and until this Court grants relief.

**COUNT V**
**JULIANNE McGUIRE**
**v.**
**ALL DEFENDANTS**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

99. McGuire incorporates by reference paragraphs 1 through 98 of her Complaint as though fully set forth at length herein.

100. Defendants' conduct was intentional, reckless, extreme and outrageous.

101. As a direct result of Defendants' conduct, McGuire suffered extreme emotional distress.

**COUNT VI**
**JULIANNE McGUIRE**
**v.**
**RCN**
**DISCRIMINATION IN VIOLATION OF ERISA**
**29 U.S.C. § 1140**

102. McGuire incorporates by reference paragraphs 1 through 101 of her Complaint as though fully set forth at length herein.

103. Defendants' action in refusing to continue to employ Plaintiff was for the purpose of

depriving Plaintiff of her rights to employee health benefits in violation of 29 U.S.C. § 1140.

## V. **PRAYER FOR RELIEF**

104. McGuire incorporates by reference paragraphs 1 through 103 of her Complaint as though fully set forth at length herein.

WHEREFORE, McGuire, respectfully request the Court to:

a. Exercise jurisdiction over her claim;

b. Issue declaratory and injunctive relief declaring the above-described practices to be unlawful, and enjoining their past and continued effects;

c. Award McGuire compensatory damages, including but not limited to reimbursement of all medical and psychological expenses; back pay and future earnings and loss of earning capacity in the amount of wages and benefits; damages for her mental, psychological and emotional injuries, anguish, humiliation, anxiety, physical and mental pain and suffering and loss of life's pleasures, all of which may be permanent, together with interest, resulting from Defendants' discriminatory and tortious conduct;

d. Reinstate McGuire to her former position together with back pay and compensatory damages;

e. Award McGuire, her attorneys' fees and costs; and

f. Grant such other relief as the Court deems just and equitable.

**JURY DEMAND**

Plaintiff, Julianne McGuire, demands trial by jury on all issues so triable.

                                            HAHALIS & KOUNOUPIS, P.C.

By: _____
     GEORGE S. KOUNOUPIS, ESQUIRE

By: _____
     DAVID L. DERATZIAN, ESQUIRE
     20 East Broad Street
     Bethlehem, PA 18018
     (610) 865-2608
     Attorneys for Plaintiff,
     Julianne McGuire

DATE: June 25, 2002